MAY 18 2026 PM3:02
FILED - USDC - FLMD - ORL

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**OCALA DIVISION**

**KENEISHA SMITH,**

Plaintiff,

v.

**INSURE CHOICE LLC d/b/a INSURE CHOICE GROUP,**

Defendant.

Case No.: 5:26-cv-355-JSS-PRL

COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff Keneisha Smith, proceeding pro se, sues Defendant Insure Choice LLC d/b/a Insure Choice Group and alleges as follows:

I. PARTIES

1. Plaintiff Keneisha Smith is an individual residing at 113 Shiloh Ave, Lady Lake, Florida 32159.
2. Plaintiff is the regular user and subscriber of telephone number 352-431-1035.
3. Plaintiff also uses telephone number 321-357-6775.

4. Both telephone numbers are used for personal, family, and household purposes.
5. Defendant Insure Choice LLC is a Wyoming limited liability company.
6. Defendant conducts business using the name Insure Choice Group.
7. Defendant's Wyoming Secretary of State record lists its principal and mailing address as 30 N Gould St, Ste R, Sheridan, Wyoming 82801.
8. Defendant's registered agent is Registered Agents Inc., 30 N Gould St Ste R, Sheridan, Wyoming 82801.
9. Defendant uses the insurechoicegroup.com domain in connection with its insurance business.
10. The third-party callers, call centers, lead generators, dialing vendors, and marketing vendors involved in the calls are not named as defendants at this time because their identities are unknown before discovery.
11. Plaintiff will seek leave to amend if discovery identifies additional responsible parties.

## II. JURISDICTION AND VENUE

12. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

13. This Court has supplemental jurisdiction over Plaintiff's Florida Telephone Solicitation Act claim under 28 U.S.C. § 1367 because that claim arises from the same calls and facts.

14. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391 because Plaintiff resides in this District and a substantial part of the events occurred in this District.

15. Venue is proper in the Ocala Division because Plaintiff resides in Lady Lake, Florida.

16. Plaintiff received the calls while located in Florida.

17. The calls solicited health insurance services to a Florida consumer and routed Plaintiff into Defendant's insurance sales and servicing process.

## III. FACTUAL ALLEGATIONS

18. Plaintiff's telephone number 352-431-1035 was registered on the National Do Not Call Registry on September 1, 2024.

19. More than 31 days passed between the registration date and the first call alleged in this Complaint.

20. Plaintiff did not give Defendant, Insure Choice Group, Revekah Espina, any healthcare marketplace caller, or any third-party marketing vendor prior express written consent to call her.

21. Plaintiff did not submit an online lead form authorizing the calls.

22. Plaintiff did not request calls from Defendant, Insure Choice Group, Revekah Espina, any healthcare marketplace caller, or any third-party marketing vendor.

23. Plaintiff had no prior business relationship with Defendant, Insure Choice Group, Revekah Espina, any healthcare marketplace caller, or any third-party marketing vendor before the calls began.

24. From November 14, 2025 through November 24, 2025, Plaintiff received 30 healthcare marketplace telemarketing calls.

25. The calls were part of one continuous healthcare marketplace telemarketing campaign made by or on behalf of Defendant through third-party callers and vendors.

26. The calls promoted health insurance services.

27. Each call included an audible pause and beep before a live agent came on the line.

28. The callers identified the calls as being from or connected to the "healthcare marketplace."

29. During the calls, Plaintiff told the callers to stop calling.

30. During the calls, Plaintiff told the callers that she was not interested.

31. The calls continued after Plaintiff made those requests.

32. Plaintiff called back the displayed caller ID numbers.

33. The displayed caller ID numbers were unreachable or invalid when Plaintiff called them back.

34. The calls used rotating caller ID numbers.

35. The displayed caller ID numbers included:

352-781-1610; 352-440-3767; 352-565-7214; 352-204-6159; 352-534-8408; 352-360-7564; 352-977-0405; 352-444-7023; 352-753-0071; 352-400-7853; 352-609-7237; 352-702-3012; 352-767-2396; 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 as recorded in Plaintiff's call log; 352-910-2570; 352-751-0150; 352-352-4347; 352-569-0981; 352-669-2608; 352-681-4514; 352-751-7057; 352-326-5801; 352-483-7036; 352-292-4803; 352-435-7210; 352-515-2374; 352-260-0841; 352-676-0382; 321-800-2670; and 512-631-3576.

36. Plaintiff's call log records the calls from November 14, 2025 through November 23, 2025 as unauthorized automated solicitation calls from "healthcare marketplace."

37. Plaintiff's call log records repeated do-not-call requests during the campaign.

38. On November 24, 2025 at approximately 10:00 a.m., Plaintiff received another healthcare marketplace solicitation call from caller ID 352-676-0382.

39. During that call, the representative stated he was calling from the marketplace.

40. The representative stated he was updating Plaintiff's current plan for the upcoming new year.

41. The representative asked Plaintiff for her name, date of birth, ZIP code, and annual income.

42. The representative placed Plaintiff on hold to transfer her to an insurance agent.

43. The attempted transfer did not connect properly.

44. The representative asked Plaintiff for an alternate telephone number.

45. Plaintiff provided 321-357-6775 only because the marketplace representative requested an alternate number during the attempted transfer.

46. Plaintiff did not provide 321-357-6775 as consent to receive future telemarketing calls.

47. Plaintiff's 321-357-6775 number was not registered on the National Do Not Call Registry.

48. At approximately 10:12 a.m. on November 24, 2025, the same marketplace representative called Plaintiff at 321-357-6775 from caller ID 321-800-2670.

49. During that call, the representative connected Plaintiff to insurance agent Revekah Espina.

50. Revekah Espina was acting as an Insure Choice Group agent and representative.

51. The call with Revekah Espina was difficult to hear.

52. Revekah Espina requested to disconnect and call Plaintiff back.

53. At approximately 10:23 a.m. on November 24, 2025, Revekah Espina called Plaintiff back from caller ID 512-631-3576.

54. Revekah Espina discussed available Molina insurance plan options with Plaintiff.

55. On November 24, 2025, Revekah Espina emailed Plaintiff from revekah@insurechoicegroup.com.

56. The email contained Molina-related information, including a provider-search link and benefit information.

57. The same day, Revekah Espina sent or forwarded a policy screenshot showing a Molina Healthcare plan for Plaintiff.

58. The policy screenshot listed Plaintiff, Keneisha Smith, as the member.

59. The policy screenshot showed Revekah Espina as the Agent of Record.

60. The policy screenshot listed Revekah Espina's NPN as 19717972.

61. Florida license records identify Revekah Espina as a licensed insurance agent with NPN 19717972.

62. Revekah Espina had a nonresident health insurance license.

63. Revekah Espina had an active appointment with Molina Healthcare of Florida, Inc.

64. On December 17, 2025, Revekah Espina sent Plaintiff a follow-up email.

65. The December 17, 2025 email stated: "Hi again Keneisha, it's Revekah from Insure Choice Group."

66. The December 17, 2025 email asked whether Plaintiff had received her member ID cards and plan documents.

67. The December 17, 2025 email included a referral link for others who wanted to see if they qualified for a plan like Plaintiff's.

68. Defendant's privacy policy describes insurance agent and representative services, communication channels, telephone call centers, third-party marketing and advertising providers, referral partners, data brokers, companies that provide or sell lists of potential purchasers, service providers, and business partners.

69. Before suit, Defendant's representative stated that Plaintiff's interaction with Defendant occurred after Plaintiff was transferred through a third-party marketing source.

70. Before suit, Defendant's representative stated that Defendant located a corresponding record by searching Plaintiff's name within Defendant's CRM.

71. Before suit, Defendant's representative stated that there were two call interactions associated with Plaintiff's enrollment.

## IV. FACTS CONNECTING THE CALLS TO DEFENDANT

72. The calls formed one healthcare marketplace telemarketing campaign from November 14, 2025 through November 24, 2025.

73. The campaign repeatedly contacted Plaintiff about healthcare marketplace insurance services.

74. The campaign used the same subject matter: health insurance and marketplace plan updates.

75. The campaign used the same call pattern: an audible pause and beep before live-agent connection.

76. The campaign continued after Plaintiff told callers to stop calling and that she was not interested.

77. The campaign used displayed caller ID numbers that were unreachable or invalid when Plaintiff called them back.

78. The campaign culminated in the November 24, 2025 call where the marketplace representative collected Plaintiff's identifying and eligibility information.

79. The marketplace representative then attempted to transfer Plaintiff to an insurance agent.

80. The marketplace representative requested Plaintiff's alternate number after the attempted transfer did not connect properly.

81. The marketplace representative then called Plaintiff's alternate number and connected Plaintiff to Revekah Espina.

82. Revekah Espina used the Insure Choice Group email domain.

83. Revekah Espina sent Plaintiff Molina-related information within minutes of the transfer sequence.

84. Revekah Espina was listed as Agent of Record on the Molina policy screenshot.

85. Revekah Espina later followed up as "Revekah from Insure Choice Group."

86. Defendant's representative stated before suit that Plaintiff's interaction with Defendant occurred after a transfer through a third-party marketing source.

87. Defendant's representative stated before suit that Defendant located Plaintiff's corresponding record in Defendant's CRM.

88. Defendant's representative stated before suit that two call interactions were associated with Plaintiff's enrollment.

89. The repeated calls, marketplace intake call, transfer to Revekah Espina, Insure Choice email, policy screenshot, agent-of-record evidence, Defendant's CRM record, and follow-up email connect the campaign to Defendant's insurance sales and servicing process.

90. Defendant accepted and used the lead generated by the calling campaign.

91. Defendant benefited from the calling campaign because its agent handled the Molina plan and was listed as Agent of Record.

## V. VICARIOUS LIABILITY, ACCEPTANCE, AND BENEFIT

92. Revekah Espina acted as an Insure Choice Group agent and representative when she communicated with Plaintiff.

93. Revekah Espina used an Insure Choice Group email address.

94. Revekah Espina identified herself as being from Insure Choice Group.

95. Revekah Espina serviced Plaintiff's Molina plan after the marketplace transfer.

96. Revekah Espina was identified as Agent of Record on Plaintiff's Molina policy screenshot.

97. The third-party callers and vendors generated and routed Plaintiff as a health insurance lead to Defendant's agent.

98. Defendant accepted the transfer through Revekah Espina.

99. Defendant's agent handled the lead immediately after the transfer.

100. Defendant's agent sent Plaintiff plan information from the insurechoicegroup.com domain.

101. Defendant's agent was listed as Agent of Record.

102. Defendant's agent later followed up with Plaintiff regarding the plan documents.

103. Defendant accepted the benefit of the campaign by using and servicing the health insurance lead generated by the campaign.

104. The identities of the third-party callers and vendors and the details of the lead source, transfer records, vendor records, CRM records, call logs, and agent-of-record records are unknown to Plaintiff before discovery.

VI. COUNT I

VIOLATION OF THE TCPA, 47 U.S.C. § 227(b)

105. Plaintiff incorporates paragraphs 1 through 104 as if fully stated here.

106. Plaintiff brings this claim against Defendant Insure Choice LLC d/b/a Insure Choice Group.

107. Plaintiff's telephone numbers 352-431-1035 and 321-357-6775 are cellular telephone numbers.

108. Plaintiff used both numbers for personal, family, and household purposes.

109. The third-party callers and vendors initiated, routed, transferred, or caused non-emergency telemarketing calls to Plaintiff's cellular telephone numbers.

110. The calls promoted health insurance services.

111. Each call included an audible pause and beep before a live sales agent came on the line.

112. The repeated pause and beep before live-agent connection support Plaintiff's allegation that the calls used automated dialing or call-delivery technology.

113. The calls were not made for emergency purposes.

114. Plaintiff did not give prior express consent or prior express written consent to receive the calls.

115. Plaintiff had no prior business relationship with Defendant, Insure Choice Group, Revekah Espina, the healthcare marketplace callers, or the third-party callers and vendors before the calls began.

116. Defendant is liable for the calls because the calls were made on its behalf, routed Plaintiff into its insurance sales process, accepted by its agent, used by its agent, and resulted in its agent being listed as Agent of Record.

117. The calls invaded Plaintiff's privacy, disrupted Plaintiff's daily life, and caused loss of use of Plaintiff's telephones.

118. Defendant violated 47 U.S.C. § 227(b).

119. The violations were knowing and willful because Plaintiff did not consent, Plaintiff told the callers to stop calling, and the calls continued.

## VII. COUNT II

VIOLATION OF THE TCPA, 47 U.S.C. § 227(c)

NATIONAL DO NOT CALL AND INTERNAL DO-NOT-CALL VIOLATIONS

120. Plaintiff incorporates paragraphs 1 through 104 as if fully stated here.

121. Plaintiff brings this claim against Defendant Insure Choice LLC d/b/a Insure Choice Group.

122. Plaintiff's telephone number 352-431-1035 was registered on the National Do Not Call Registry on September 1, 2024.

123. Plaintiff's 352-431-1035 number was used for personal, family, and household purposes.

124. Plaintiff received more than one telemarketing call within a 12-month period to her National Do Not Call Registry number.

125. The calls promoted health insurance services.

126. The third-party callers and vendors initiated, routed, transferred, or caused the healthcare marketplace telemarketing calls to Plaintiff.

127. The calls were made by or on behalf of Defendant because the campaign routed Plaintiff to Defendant's agent, Defendant's agent accepted the transfer, Defendant's agent sent plan information, Defendant's agent was listed as Agent of Record, and Defendant's agent later followed up with Plaintiff as "Revekah from Insure Choice Group."

128. Plaintiff did not invite or permit the calls.

129. Plaintiff did not give prior express written consent.

130. Plaintiff had no established business relationship with Defendant, Insure Choice Group, Revekah Espina, the healthcare marketplace callers, or the third-party callers and vendors before the calls began.

131. Plaintiff told the callers to stop calling.

132. Plaintiff told the callers that she was not interested.

133. The calls continued after Plaintiff made those do-not-call requests.

134. Defendant accepted and used the lead generated by the campaign after Plaintiff had been repeatedly called and after Plaintiff had made do-not-call requests.

135. Defendant failed to honor Plaintiff's National Do Not Call rights.

136. Defendant failed to honor Plaintiff's internal do-not-call requests.

137. Defendant violated 47 U.S.C. § 227(c) and the regulations issued under that section.

138. The violations were knowing and willful because Plaintiff's number was on the National Do Not Call Registry, Plaintiff told callers to stop calling, Plaintiff said she was not interested, and the calls continued.

VIII. COUNT III

VIOLATION OF THE FLORIDA TELEPHONE SOLICITATION ACT

FLA. STAT. § 501.059

139. Plaintiff incorporates paragraphs 1 through 104 as if fully stated here.

140. Plaintiff brings this claim against Defendant Insure Choice LLC d/b/a Insure Choice Group.

141. Plaintiff is a Florida resident.

142. Plaintiff was located in Florida when she received the calls.

143. Plaintiff's telephone numbers were used for personal, family, and household purposes.

144. The third-party callers and vendors initiated, routed, transferred, or caused unsolicited telephonic sales calls to Plaintiff.

145. The calls were telephonic sales calls because they solicited or promoted health insurance services.

146. Plaintiff did not give prior express written consent to receive the calls.

147. Plaintiff did not sign any written agreement authorizing Defendant to call her with automated telemarketing calls.

148. Plaintiff did not submit an online lead form authorizing Defendant to call her.

149. The calls involved an automated system for the selection and dialing of telephone numbers, shown by the repeated audible pause and beep before a live sales agent came on the line.

150. The healthcare marketplace calling campaign used displayed caller ID numbers during the calls.

151. Plaintiff called back the displayed caller ID numbers.

152. The displayed caller ID numbers were unreachable or invalid.

153. The caller ID numbers did not connect Plaintiff to the solicitor or seller responsible for the calls.

154. Plaintiff told the callers to stop calling.

155. Plaintiff told the callers that she was not interested.

156. The calls continued after Plaintiff made those requests.

157. Defendant is liable because the calls were made for its benefit, routed Plaintiff into its insurance sales process, accepted by its agent, used by its agent, and resulted in its agent being listed as Agent of Record.

158. Defendant violated Fla. Stat. § 501.059, including § 501.059(5), § 501.059(8)(a), and § 501.059(8)(b).

159. Defendant's violations were willful and knowing because the calls continued after Plaintiff told callers to stop calling and because the campaign used unreachable or invalid caller ID numbers.

## IX. DAMAGES

160. Plaintiff suffered harm from Defendant's unlawful calls.

161. The calls invaded Plaintiff's privacy.

162. The calls interrupted Plaintiff's daily life.

163. The calls caused inconvenience and loss of use of Plaintiff's telephones.

164. Plaintiff seeks statutory damages of $500 per violation under the TCPA.

165. Plaintiff seeks treble damages up to $1,500 per knowing or willful TCPA violation.

166. Plaintiff seeks statutory damages available under the FTSA.

167. Plaintiff seeks treble damages where authorized under the FTSA.

168. Plaintiff does not seek double recovery.

169. Plaintiff seeks only one recovery per proven violation and does not seek duplicate damages for the same injury under overlapping legal theories.

170. Plaintiff seeks the maximum statutory recovery allowed by law for each proven violation.

171. Plaintiff also seeks costs and any other relief the Court deems just and proper.

## X. DEMAND FOR A JURY TRIAL

172. Plaintiff demands a trial by jury on all issues so triable.

## XI. LEAVE TO AMEND

173. If the Court determines that any allegation is insufficient, Plaintiff respectfully requests leave to amend.

174. Plaintiff is proceeding pro se and has pleaded the facts currently available to her before discovery.

175. Discovery will identify the true names of the third-party callers and vendors and additional records concerning the lead source, call transfers, vendor relationships, CRM records, call logs, and agent-of-record records.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant and award:

A. Statutory damages under the TCPA;

B. Treble damages for knowing or willful TCPA violations;

C. Statutory damages under the FTSA;

D. Treble damages where authorized under the FTSA;

E. Costs;

F. Leave to amend as needed after discovery; and

G. Any other relief the Court deems just and proper.

Respectfully submitted,

Dated: May 18 2026

**Keneisha Smith**

Plaintiff, Pro Se

113 Shiloh Ave

Lady Lake, FL 32159

Phone: 352-431-1035

Email: keneisha.smith1@icloud.com